IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**JAMES O'BRIEN LACKARD**,

    **Petitioner,**

v.                                            **Case No.: 5:15-cv-00517**

**JOE COAKLEY, Warden,**
**FCI Beckley,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

On January 12, 2015, James O'Brien Lackard (hereinafter "Petitioner") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). Pending before the court are Petitioner's petition and Respondent's motion to dismiss as set forth in his response to the Court's Show Cause Order. (ECF Nos. 1, 7). This case is assigned to the Honorable Irene C. Berger, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Petitioner's Petition for a Writ of Habeas Corpus, **GRANT** Respondent's motion to dismiss, and **DISMISS** this action from the docket of the Court.

**I.**     **Introduction**

Petitioner is a federal prisoner incarcerated in Federal Correctional Institution,

1

Beckley, West Virginia ("FCI Beckley"). His present case concerns his participation in the Inmate Financial Responsibility Program ("IFRP") through the Federal Bureau of Prisons ("BOP").

On January 11, 2013, the court that imposed Petitioner's sentence entered an Order of Forfeiture, which provided that in accordance with Petitioner's plea agreement, Petitioner was ordered to "immediately and voluntarily" forfeit to the United States the sum of $500,000.00; the amount to be forfeited constituted the proceeds derived from the criminal violation (conspiracy to distribute heroin) to which Petitioner pleaded guilty. (ECF No. 7-1 at 4, 11-13). According to Petitioner, upon receipt of the Forfeiture Order, the BOP presented him with a contract to participate in the IFRP, stating that his participation was required and he would be disciplined if he failed to participate. (ECF No. 1 at 2). Petitioner signed the IFRP contract, and the BOP began withdrawing funds from his inmate account to satisfy the Forfeiture Order. His payment plan was initially $40.00 per month, but it was later reduced to $25.00 per quarter. (ECF Nos. 1 at 7, 7-1 at 16, 11 at 12).

Petitioner submitted an administrative remedy request to the BOP, challenging his participation in the IFRP. (ECF No. 1 at 5); *see* 28 C.F.R. § 542.10 *et seq.* However, he concedes, and the records establish, that he did not exhaust all steps of the Administrative Remedy Program ("ARP"). (*Id.*; ECF No. 11 at 4, 7-9). Petitioner claims that while his regional level appeal was pending, he "discovered that case law does not require exhaustion of BOP's ARP remedies before [bringing the] matter to the courts." (ECF No. 1 at 2).

Therefore, on January 12, 2015, Petitioner filed the instant habeas petition. Petitioner argues that the Court should excuse his failure to exhaust his administrative

remedies, because it would be futile to present his challenges to the very agency that generated the IFRP. (*Id.* at 5-6). As stated in his administrative remedy request and appeal, Petitioner argues that the BOP does not have the authority to collect payments from him through the IFRP. (*Id.* at 6-9). He claims that for a criminal penalty order, such as his Forfeiture Order, to be valid, the sentencing court must consider the defendant's financial resources and establish a payment schedule. According to Petitioner, the court may not delegate that responsibility to the BOP. (*Id.*). He contends that, in this case, because the sentencing court did not establish a forfeiture payment schedule, the BOP improperly usurped the authority of the court by placing him in the IFRP and setting a payment plan. (*Id.* at 10). He requests that the Court order the BOP to cease requiring him to participate in the IFRP and reimburse him for all funds "illegally taken" from him. (*Id.*).

In response, Respondent contends that the habeas petition should be dismissed for lack of exhaustion. (ECF No. 7 at 3-4). Respondent argues that Petitioner's belief that he will not receive the remedy requested does not make the ARP futile and waiving exhaustion would reward him for bypassing the process. (*Id.* at 4). In addition, Respondent cites case law supporting the proposition that because Petitioner's forfeiture order provided for immediate payment of the stated amount when the order became final at sentencing, the court did not "delegate its authority to set the amount and timing of the forfeiture to the BOP." (*Id.* at 6-7). Finally, Respondent argues that to the extent that Petitioner is challenging the constitutionality of the IFRP, compelled participation in the program is neither punitive in nature, nor does it violate due process because it is reasonably related to a legitimate government objective of rehabilitation.

3

## II. Discussion

### A. Exhaustion of Administrative Remedies

As noted above, Petitioner concedes that he did not exhaust his administrative remedies. However, he argues that the Court should excuse such failure on the ground of futility. (ECF No. 1 at 5-6). Petitioner's records corroborate that he abandoned his administrative remedy request at the regional level. (ECF No. 11 at 4, 8-9); *see* 28 C.F.R. § 542.15(a).

The ARP involves three levels of review. Within certain time frames, after pursuing informal resolution, an inmate can submit an administrative remedy request to his facility's Warden on the prescribed form. 28 C.F.R. § 542.13. If the inmate is dissatisfied with the Warden's response, the inmate may submit an appeal to the Regional Director and, as the final step, the inmate may appeal the Director's decision to the General Counsel. 28 C.F.R. §§ 542.14-15.

Generally, an inmate should exhaust adequate alternative remedies before seeking a writ of habeas corpus in federal court. *Boumediene v. Bush*, 553 U.S. 723, 782 (2008); *McClung v. Shearin*, 90 Fed. Appx. 444, 445 (4th Cir. 2004) (an inmate must exhaust administrative remedies before filing a § 2241 petition) (citations omitted). Habeas relief under 28 U.S.C. § 2241 is always available "to safeguard the fundamental rights of persons wrongly incarcerated," but it is an "avenue of last resort." *Timms v. Johns*, 627 F.3d 525, 531 (4th Cir. 2010) (citing *Martin-Trigona v. Shiff*, 702 F.2d 380, 388 (2d Cir. 1983)). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being brought into court. *Arbaugh v. Berkebile*, No. 5:10-cv-0528, 2010 WL 5481198, at *3 (S.D. W. Va. Nov. 8, 2010), *report and recommendation adopted*, No. 5:10-cv-00528, 2011 WL 9387 (S.D. W. Va. Jan. 3, 2011)

4

(citing *Jones v. Bock,* 549 U.S. 199, 204 (2007); *McCarthy v. Madigan,* 503 U.S. 140, 144–45 (1992)).

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has stated that an inmate's failure to exhaust his administrative remedies before filing a § 2241 petition "may only be excused upon a showing of cause and prejudice." *McClung*, 90 Fed. Appx. at 445. District courts in the Fourth Circuit have excused a § 2241 petitioner's failure to exhaust his administrative remedies on the basis of futility. *Larue v. Adams*, No. 1:04-cv-00396, 2006 WL 1674487, at *8–9 (S.D. W. Va. June 12, 2006); *see also Bost v. Adams*, No. 1:04-cv-00446, 2006 WL 1674485, at *6-7 (S.D. W. Va. June 12, 2006). Other courts in the circuit have also excused exhaustion when "the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Wright v. Warden, FCI-Cumberland*, No. RDB-10-671, 2010 WL 1258181, at *1 (D. Md. Mar. 24, 2010) (citing *Lyons v. U.S. Marshals,* 840 F.2d 202, 205 (3rd Cir. 1988). In any event, exhaustion should only be excused "in rare cases where exceptional circumstances of peculiar urgency are shown to exist." *Id.* (quoting *Rose v. Lundy,* 455 U.S. 509, 515–516 (1982)).

In *Larue* and *Bost*, the court found that it would be futile for the petitioners to be required to exhaust their administrative remedies because the ultimate appeals would be to the Office of General Counsel ("General Counsel"), the entity that issued the BOP policy that the inmates were challenging. *Id.* In the foregoing cases, the court cited with agreement decisions of other circuits, which demonstrate that exhaustion would be futile when, by some circumstance, it is almost certain that the petitioner will not receive a genuine opportunity for relief through the ARP. *Id.*

5

In the instant action, Petitioner cites Ninth Circuit law in support of his position that it would be futile to exhaust his administrative remedies because he is challenging the IFRP, a BOP program. (ECF No. 1 at 5-6). However, Ninth Circuit precedent is not controlling in this case. Furthermore, this case does not involve the requisite "cause and prejudice" to excuse the exhaustion requirement. Petitioner's unsupported belief that he would not receive redress through the ARP is an insufficient basis to waive exhaustion. *See, e.g., Wright,* 2010 WL 1258181, at *1 (Exhaustion can be granted on the basis of futility if the BOP is certain to rule adversely, but an unsupported prediction of failure does not excuse lack of exhaustion) (citing *Thetford Prop. IV Ltd. P'ship v. U.S. Dep't of Hous. & Urban Dev.,* 907 F.2d 445, 450 (4th Cir. 1990) ("Allowing a petitioner to avoid the administrative process based on a mere conclusory assertion 'would allow the futility exception to swallow the exhaustion.'")).

By Petitioner's own admission, he did not submit an appeal to the BOP's General Counsel. There is no indication in the record and no argument or evidence submitted by Petitioner which demonstrates the futility of the ARP in Petitioner's case. The simple fact that the IFRP is a BOP program does not establish that the General Counsel would deny Petitioner's administrative remedy request. Petitioner is challenging the IFRP as it specifically applies to him. He is not challenging it as an overall policy or program. Petitioner contends that his Forfeiture Order does not contain the necessary findings and language for the BOP to compel his participation in the IFRP. As his arguments are specific to his case, they were appropriate for resolution in the ARP before Petitioner resorted to bringing this habeas action. Petitioner should not be permitted to bypass the ARP simply because he believed that he would be unsuccessful in that forum. Further, as discussed in greater detail below, Petitioner's claims fail on the merits. Therefore, the

6

undersigned **FINDS** that Petitioner's failure to exhaust his administrative remedies should not be waived in this case.

### B. Petitioner's Forfeiture Payments Through the IFRP

The substantive issues presented by Petitioner have been analyzed many times in this circuit in the context of restitution payments and other court-imposed fines. For example, in *United States v. Johnson*, 48 F.3d 806 (4th Cir. 1995), the Fourth Circuit held that "making decisions about the amount of restitution, the amount of installments, and their timing is a judicial function and therefore is non-delegable." *Id.* at 809. In that case, the sentencing court entered a restitution order, which stated that the defendant "shall make restitution of not less than $6,000.00 but not more than $35,069.10, ***in such amounts and at such times as may be directed by the Bureau of Prisons and/or the Probation Officer*** …" *Id.* at 807 (emphasis added). The Fourth Circuit discussed that the imposition of a sentence, including an order of restitution, is a "core judicial function" of Article III courts and that "[c]ases or controversies committed to Art. III courts cannot be delegated to nonjudicial officers for resolution." *Id.* at 808-09.

Nonetheless, the Fourth Circuit was clear in *Johnson* that the "general principle does not, however, prohibit courts from using nonjudicial officers to *support* judicial functions, as long as a judicial officer retains and exercises ultimate responsibility." *Id.* at 809. Ultimately, the Fourth Circuit found that in Johnson's case, "the district court appear[ed] to have delegated to the probation officer the final authority to determine the amount of restitution and the amount of installment payments (albeit within a range), without retaining ultimate authority over such decisions (such as by requiring the probation officer to *recommend* restitutionary decisions for approval by the court)." *Id.* Therefore, Johnson's sentence was vacated and the case remanded for resentencing

7

consistent with the Fourth Circuit's opinion. *Id.*

The following year, the Fourth Circuit held that the reasoning in *Johnson* equally applied to criminal fines. In *United States v. Miller*, 77 F.3d 71, 77–78 (4th Cir. 1996), the district court ordered the defendant to pay a $3,000.00 fine and $50.00 restitution "at such times and in such amounts as the Bureau of Prisons and/or the Probation Office may direct." *Id.* at 74. Applying its prior precedent, the Fourth Circuit concluded that "the district court erroneously delegated its authority to set the amount and timing of Miller's fine and restitution payments to the [BOP] and/or the probation officer, without retaining ultimate authority over such decisions." *Id.* at 78. Therefore, the Court held that the portion of Miller's sentence relating to the fine and restitution must be vacated. *Id.*

As relevant to the present matter, the Fourth Circuit subsequently considered whether the IFRP constitutes the delegation of a district court's authority to set the amount and timing of criminal monetary penalties to the BOP in violation of *Miller*. The Fourth Circuit definitively held that when a district court orders that a monetary penalty is due "immediately," it thereby sets the amount and timing of the penalty. Thus, the inmate's payment of the penalty through subsequent participation in the BOP's IFRP does not usurp the court's authority. *Coleman v. Brooks*, 133 Fed. Appx. 51, 53 (4th Cir. 2005); *United States v. Caudle*, 261 Fed. Appx. 501, 503–04 (4th Cir. 2008). The Fourth Circuit noted that an "immediate payment directive is generally interpreted to require payment to the extent that the defendant can make it in good faith, beginning immediately." *Coleman*, 133 F. App'x at 53 (citing *Matheny v. Morrison,* 307 F.3d 709, 712 (8th Cir. 2002) (internal quotation marks omitted) (holding that "BOP has the discretion to place an inmate in the IFRP when the sentencing court has ordered immediate payment of the court-imposed fine")). As such, the BOP was thus "properly using the IFRP as an avenue

8

to collect Coleman's restitution, just as it would any other debt owed by him." *Id.* (citing *McGhee v. Clark,* 166 F.3d 884, 886 (7th Cir.1999) ("Nothing barred the BOP from ensuring pursuant to the IFRP that [defendant] make good-faith progress toward satisfying his court-ordered obligations")); *see also* 28 C.F.R. § 545.11 (2004) (requiring inmates to make payments towards court-ordered obligations, including fines).

Like the above cases, the sentencing court in this case did not delegate the amount or terms of Petitioner's forfeiture to the BOP. The Forfeiture Order clearly specifies that Petitioner must "immediately" forfeit $500,000.00 and that the Court shall retain jurisdiction in the case for the purpose of enforcing the Order. (ECF No. 7-1 at 11-12). While the IFRP allowed Petitioner to establish a payment plan toward meeting this obligation, it did not delegate to the BOP any authority over the terms of the forfeiture. The plain language of the Forfeiture Order unequivocally required payment of the entire specified amount "immediately" at sentencing. (*Id.*). The IFRP merely offered Petitioner "an avenue for making payments toward a monetary penalty imposed by the court." *Webb v. Hammidullah*, No. 5:06-cv-00096, 2007 WL 2138752, at *3 (N.D. W. Va. July 23, 2007). Consequently, Petitioner's contentions that his Forfeiture Order was invalid and that the BOP has been illegally withdrawing money from his inmate account through the IFRP are without merit.

Further, to the extent that Petitioner insinuates that he was forced to participate in the IFRP, the undersigned finds no error. "[T]he IFRP has uniformly been upheld against constitutional attacks on due process grounds." *Webb*, 2007 WL 2138752, at *3. It is well established that "compelled participation in IFRP is neither punitive in nature nor a violation of due process because it is reasonably related to a legitimate governmental objective of rehabilitation." *Taylor v. Batts*, No. 1:11-cv-00172, 2012 WL 1067408, at *2

9

(S.D. W. Va. Feb. 24, 2012), *report and recommendation adopted,* No. 1:11-cv-00172, 2012 WL 1067226 (S.D. W. Va. Mar. 28, 2012) (citations omitted).

The BOP "implemented the IFRP to comply with federal statutes requiring that all law enforcement agencies engage in a "diligent effort … to collect court-ordered financial obligations." *Robertson v. Wilson*, No. 2:14-cv-00311, 2015 WL 9806680, at *3 (E.D. Va. Dec. 4, 2015), *report and recommendation adopted*, No. 2:14-cv-00311, 2016 WL 183543 (E.D. Va. Jan. 14, 2016) (citing BOP Program Statement 5380.08 at ¶ 1). Accordingly, the IFRP exists as a means of "encourag[ing] each sentenced inmate to meet his or her legitimate financial obligations." *Id.* (citing 28 C.F.R. § 545.10). Participation in the IFRP is voluntary. While refusal to participate incurs certain consequences, the repercussions "amount to the loss of privileges, not the imposition of hardships upon non-participating inmates." *Robertson*, 2015 WL 9806680, at *3 (citing *Driggers v. Cruz,* 740 F.3d 333, 338 (5th Cir. 2014)); *Fontanez v. O'Brien*, 807 F.3d 84, 85 (4th Cir. 2015) ("the IFRP is voluntary; the BOP cannot compel an inmate to make payments … But inmates with financial obligations who refuse to participate in the IFRP may no longer be eligible for many privileges, including more desirable housing and work outside the prison); 28 C.F.R. § 545.11(d).[1]

It is well recognized in the Fourth Circuit that "the IFRP program serves valid penological interests and is fully consistent with the [BOP's] authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation" of federal

---

[1] The consequences for refusal to participate in the IFRP include notifying the Parole Commission of the inmate's failure to participate; the inmate not receiving furlough, anything above maintenance pay, bonus or vacation pay, or work detail outside the secured perimeter of the facility; the inmate not being placed in UNICOR; the inmate receiving a more stringent monthly commissary spending limit; the inmate receiving lowest housing status (dormitory, double bunking, etc.); the inmate not being placed in a community-based program; the inmate not receiving a release gratuity unless approved by the Warden; and the inmate not receiving an incentive for participation in residential drug treatment programs. 28 C.F.R. § 545.11(d).

inmates and that "[c]onsistent with the goal of promoting rehabilitation, 'the BOP retains discretion to place an inmate in IFRP in order to achieve compliance with the sentencing court's directives.'" *Robertson*, 2015 WL 9806680, at *3; *Bellamy v. Butler*, No. 1:13-cv-32486, 2015 WL 917762, at *9 (S.D. W. Va. Mar. 3, 2015)*; Bryant v. Berkebile*, No. 5:10-cv-00482, 2013 WL 4012641, at *2 (S.D. W. Va. Aug. 5, 2013); *Webb*, 2007 WL 2138752, at *3; *Snyder v. Butler*, No. 1:13-cv-27993, 2014 WL 3565984, at *4 (S.D. W. Va. June 11, 2014), *report and recommendation adopted*, No. 1:13-cv-27993, 2014 WL 3566005 (S.D. W. Va. July 18, 2014).

Accordingly, for all of the reasons stated above, the undersigned **FINDS** that Petitioner's challenges to his participation in the IFRP are without merit.

### III. Proposal and Recommendations

For the forgoing reasons, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) be **DENIED,** and this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

Petitioner is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (for mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension

of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner.

**FILED:** February 1, 2017

_____
Cheryl A. Eifert
United States Magistrate Judge